1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JARED KRISTOPHER RYSEDORPH, | Case No. 1:23-cv-00251-NODJ-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| JOHN, *et al.*, | (ECF No. 28) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Jared Kristopher Rysedorph ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on February 21, 2023. Before the Court could screen Plaintiff's complaint, Plaintiff sought leave to file an amended complaint. The Court granted the request. The Court screened Plaintiff's first amended complaint, and Plaintiff was granted leave to amend. Plaintiff's second amended complaint is before the Court for screening. (ECF No. 28.)

## I.      Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.    Plaintiff's Allegations**

Plaintiff is currently housed at California Health Care Facility. Plaintiff alleges the events in the complaint occurred while housed at California Substance Abuse and Treatment Facility ("SATF") and North Kern State Prison ("NKSP"). Plaintiff names as defendants: (1) Bini John, Nurse Practitioner at NKSP, (2) Randy Le, registered dietitian, SATF, (3) Anu Banerjee, Chief Executive Officer, SATF, (4) D. O'Donaughy, Correctional Food Manager, SATF.

Plaintiff alleges that he has been diagnosed since childhood with Celiac Disease. Exposure to gluten causes damage to the gastrointestinal tract, central nervous system, and other organs. Gluten is found in grains, wheat, barley, which patients with Celiac Disease must avoid. The Celiac Foundation states that untreated Celiac Disease can lead to autoimmune disorder and other conditions.

On 1/29/2020, Plaintiff was incarcerated in San Diego County Sherriff's Department. Plaintiff had been maintaining a gluten free diet since his diagnosis in 2011. All meals provided contained gluten. Medical staff at San Diego County jail administered an antibody test to Plaintiff which came back positive for Celiac Disease. Plaintiff was then prescribed a gluten free

1   diet and was given that diet for the entirety of his custody there.

2          On February 14, 2022, Plaintiff was sentenced to state prison. On 5/4/22, Plaintiff was

3   transferred to North Kern State Prison, and he told medical staff that he has Celiac Disease and

4   needs a gluten free diet.  Three days later, Plaintiff continued to receive regular gluten containing

5   meals.

6          On 5/7/22, Plaintiff submitted a 7362 health care service request form.  Plaintiff states that

7   he needed a special diet because he has Celiac Disease and cannot eat gluten.  Plaintiff asked for

8   an appointment with a dietitian.

9          On 5/18/22, Defendant Bini John, the attending physician responsible for health care of

10  inmates, interviewed Plaintiff.  Plaintiff told Bini John that Plaintiff had previously been

11  diagnosed with Celiac Disease by a physician and had been prescribed a gluten free diet while in

12  custody at San Diego.  Bini John had the medical records from San Diego Sheriff's department

13  which identified Plaintiff as having Celiac Disease and contained the positive results for the

14  Celiac Disease antibody test while housed in San Diego.

15         Bini John, as the primary care physician, was responsible for ordering medically

16  necessary therapeutic diets, ensuring continuity of care by ordering necessary treatment and

17  referring Plaintiff to a registered dietitian for dietary consultation.  Defendant Bini John recorded

18  Plaintiff's history of Celiac Disease and advised Plaintiff to avoid gluten food.  He ordered an

19  antibody test and scheduled an appointment for 60 days later.  He did not order Plaintiff's

20  medically necessary diet or refer Plaintiff for a dietary consultation.  Plaintiff avoided gluten food

21  and attempted to trade gluten containing foods for nuts and seeds.

22         On 5/25/2020,[1] the antibody test ordered by Bini John came back negative for antibodies

23  for Celiac Disease.  According to the Celiac Disease foundation, a person must be on a gluten

24  containing diet for antibody testing to be accurate.  Since Plaintiff was not on a gluten containing

25  diet, the negative result was inaccurate.

26         Plaintiff had no choice but to start eating gluten food due to John's failure to order

27

28  _____
    [1] This date appears to be an error, and it should be the year 2022.

3

Plaintiff a prescribed diet. Plaintiff immediately experienced severe abdominal pain, diarrhea, and headaches.  Plaintiff submitted a 602 form expressing concern that the test ordered by John was not the right test.

On 6/8/2022, a registered nurse interviewed Plaintiff regarding his 602.  Plaintiff said he had been diagnosed with Celiac Disease and was prescribed a gluten free diet while in custody in San Diego Sheriff department.  The nurse told Plaintiff that the negative result of the antibody test meant that Plaintiff does not have Celiac Disease.  Plaintiff said he thought the test was inaccurate.

Plaintiff was transferred on 6/14/22 to Substance Abuse Treatment Facility ("SATF").  Plaintiff continued to submit health care service request forms for a gluten free diet and treatment for his symptoms.  He was seen by Dr. Eleonor Griffith, primary care physician. She reviewed Plaintiff's record, his diagnosis, prescribed a gluten free diet, and ordered dietary consultation.

Defendant Randy Le is a registered dietitian at SATF and is responsible for providing dietary consultations and recommendations.  On 6/23/22, without meeting or interviewing Plaintiff, Defendant Le recommended discontinuing the prescription for a gluten free diet, despite Dr. Griffith's diagnosis and recommendation of a gluten free diet.  Defendant Le failed to provide dietary consultation and recommendations to Plaintiff as required under CDCR policy. Defendant Le's duties do not include discontinuing a recommendation by a doctor. And Defendant Le conspired to interfere with Plaintiff's prescribed treatment by directing the recommendation to a different doctor, Dr. Ndu, who was not involved in Plaintiff's care and had never met Plaintiff. Dr. Ndu ordered Plaintiff's necessary diet to be discontinued.  As a result of Defendant Le's actions, Plaintiff suffered further exposure to gluten, and Plaintiff's gastrointestinal symptoms worsened drastically.

On 6/27/22, a subsequent test came back for indicators of Celiac Disease, and Defendant Le recommended Plaintiff's necessary gluten free diet be reordered.  Dr. Ndu reordered the diet.

On 7/8/22, Plaintiff started receiving his diet with meals packaged in small paper bags which were labeled "gluten free."  In the following weeks, Plaintiff's symptoms continued to worsen.  Plaintiff's gastrointestinal issues were so severe the Plaintiff was scarcely able to move

1   from his living area to the restroom.  Plaintiff looked closely at the foods in the paper bags, which

2   were in unmarked plastic containers, and saw that the food contained gluten containing grains

3   such as malt and wheat.

4         On 11/10/22, Plaintiff had a remote consultation with registered dietitian Ernie Lin who

5   Plaintiff told that the gluten free food in fact contained gluten. Lin told Plaintiff that gluten foods

6   were included in the "gluten free" meals because there was no dietitian providing direction and

7   supervision for the preparation of food at SATF.

8         Defendant Anu Banerjee is the Chief Executive Officer of Health Care at SATF and has

9   the overall responsibility for an effective health care system. Defendant is responsible for

10  implementation of a system to provide necessary medical diets.  He is the hiring authority

11  responsible for the employment of an onsite registered dietician to supervise the preparation of

12  diets at SATF. Plaintiff's type of therapeutic diet is a medically necessary meal plan because it is

13  prescribed by a physician.

14        CDCR policy requires therapeutic diets to be prepared under the direction of a registered

15  dietitians and that such patients be housed at institutions which have the capacity to prepare the

16  diets.

17        Defendant Banerjee failed to employ a registered dietician to direct preparation of

18  therapeutic diets while Plaintiff was housed at SATF. This created a situation where gluten free

19  diets regularly included gluten containing foods, which were given to Plaintiff.

20        California Correctional Health Care Services ("CCHCS") is the department of CDCR

21  which is responsible for all institutions' operations related to medical treatment.  Defendant D.

22  O'Donaughy is the Correctional Food Manager at SATF.  He is responsible for ensuring the

23  CCHCS standardized meal plans are followed.  The standardized CCHCS meal plans were not

24  followed and untrained kitchen staff were preparing meals and guessing which food would be

25  gluten free.  Since Plaintiff could not eat much of the food he was provided, he mainly relied on

26  food sent to him by family and friends.

27        On 12/7/22, Plaintiff filed a 602 grievance regarding continually receiving gluten foods in

28  his gluten free diet because no registered dietician was supervising the preparation of food.

Defendant Banjeree and O'Donaughy denied the grievances.

During a remote consultation on 3/2/23, Lin confirmed Plaintiff was still receiving gluten in his meals, noted Plaintiff's significant weight loss and recommended Plaintiff be transferred to an institution which could provide supervision of food preparation.  Plaintiff filed another 602 grievance, and Banerjee responded that no intervention was required.

On 3/22/23, Plaintiff was diagnosed with dermatitis herpetiformis, a severe skin rash which is a manifestation of Celiac Disease.  On 4/17/23, it was reported that Plaintiff was malnourished and it was directly affecting his mental health.  On 4/28/23, the Chief Medical Officer Ugweze confirmed that Plaintiff was receiving gluten in his diet and that that would be stopped and also confirmed that SAFT does not have a registered dietitian, although recruitment is in process.  On 5/3/23, the Reasonable Accommodation Panel responded to Plaintiff's request to be transferred to a facility which could provide a gluten free diet.  The request was denied, and recognized that Plaintiff was given gluten cereal, but that SATF would provide a gluten free diet.

On 5/9/23, Plaintiff was diagnosed with colitis and gastritis after a colonoscopy due to prolonged exposure to gluten.  Ugweze identified multiple gluten foods in Plaintiff's food, and the CCHCS standardized meals were not being followed and recommended that Plaintiff be transferred.

In June, Plaintiff began to experience more severe symptoms and defendants continued to deny him access to his necessary diet. On 6/23/23, Ugweze diagnosed Plaintiff with gastrointestinal bleeding and that Plaintiff was awaiting transfer to a facility with an onsite dietitian.  Plaintiff was hospitalized and diagnosed with severe fecal stasis. On 7/7/23, Plaintiff fainted again due to malnourishment and stress caused by defendants' actions of denying Plaintiff his medically necessary diet. When Plaintiff fell, he suffered a fracture of his right hand. On the same day, Plaintiff was transferred from SATF to California Health Care Facility because of SATF's inability to accommodate Plaintiff's medical needs.

Plaintiff alleges that due to prolonged, about a year, denial of gluten free diet, Plaintiff has suffered numerous additional injuries: diffuse intestinal ulceration and dermatitis herpetiform, colitis, gastritis, gastroesophageal reflux disease, episodes of faintness and dizzy spells, fatigue

and migraine headaches, loss of over 30 pounds in 6 months, baseline malabsorption, lactose intolerance, malnourishment.  Plaintiff is no longer able to eat many of the foods he use to enjoy, and his diet excludes all dairy products, high fiber foods, and high sugar foods.  Plaintiff has to wear diapers every day due to bowel incontinence.

As to his claims, Plaintiff summarizes as follows.  After being informed that Plaintiff had been maintaining a gluten free diet, and instructing Plaintiff to continue to maintain a gluten free diet, defendant John ordered an antibody test that cannot be accurate if the patient maintains a gluten free diet.  Defendant John knew or should have known that the results of the test would be in accurate.  She knew or should have known that the same test had been previously taken on Plaintiff and had come back positive and that Plaintiff was already prescribed a gluten free diet, based on medical records from the transferring institution.  The acts or omissions of Defendant John in having actual knowledge of Plaintiff's Celiac Disease and failing to order a gluten free diet caused Plaintiff injuries.

Plaintiff brought his need for a gluten free diet to Defendant O'Donaughy multiple times.  He denied that the Food Services Department was preparing such therapeutic diets when Food Services Department is required to prepare food.  He failed to perform his duties of ensuring a system in which standardized menus are adhered to. He had knowledge of Plaintiff's need for gluten free diet and failed to ensure that CCHCS standardized gluten free meal plan menu was followed.  He denied Plaintiff access to his medically necessary diet which caused injury to Plaintiff.

Defendant Le was required to provide consultation services to Plaintiff, failed to perform his duty.  He recommended that Plaintiff's medically necessary diet be discontinued without examining, or even seeing Plaintiff.  Defendant Le had actual knowledge of Plaintiff's Celiac Disease and the need for prescribed gluten free diet and denied Plaintiff access to the medically necessary gluten free diet, which caused injury to Plaintiff.  Defendant Banerjee knew about the lack of a registered dietitian and substantial risks created by the deficient and ignored the risk.  He failed to perform his personal duty to ensure a system to provide outpatient therapeutic diets.  He had actual knowledge of Plaintiff's Celiac Disease and that Plaintiff was receiving gluten in his

7

1   meals.  In failing to employ a registered dietician as required or arrange for Plaintiff to be put in a

2   suitable institution, he denied Plaintiff necessary prescribed treatment, which caused injury to

3   Plaintiff.

4        As remedies, Plaintiff seeks compensatory and punitive damages.

5   **III.    Discussion**

6        **A.    Federal Rule of Civil Procedure 8**

7        Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim

8   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Detailed factual allegations

9   are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

10  conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must

11  set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

12  its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations

13  are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*,

14  572 F.3d at 969.

15       Here, Plaintiff's complaint is relatively short, but it is not a clear statement of his claims.

16  While the allegations assert that Plaintiff seeks a gluten free diet, many of Plaintiff's allegations

17  are conclusory and do not state what happened, when it happened, or which defendant was

18  involved.  General assertions regarding who knew what about Plaintiff are not sufficient, and

19  Plaintiff may not merely state that actions happened without providing any factual allegations in

20  support of his claims.

21       **B. Federal Rules of Civil Procedure 18 and 20**

22       As Plaintiff was previously informed, Plaintiff may not bring unrelated claims against

23  unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d

24  950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*,

25  2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021

26  WL 843462 (E.D. Cal. Mar. 5, 2021).  Plaintiff may bring a claim against multiple defendants so

27  long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and

28  occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2);

1    *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement

2    refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are

3    properly joined under Rule 20(a) will the Court review the other claims to determine if they may

4    be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

5         Plaintiff may not raise different claims against different defendants at different institutions

6    in a single action. Claims arising in different institutions must be brought in different lawsuits.

7    Further, Plaintiff appears to be challenge unrelated conduct by different individuals in failing to

8    provide a gluten free diet. Merely because Plaintiff was concerned about his gluten free diet at

9    different institutions or by different people, over a year's time frame, does not make every injury

10   or incident related. Here, Plaintiff continues to join unrelated claims, the Court therefore will

11   choose which properly joined cognizable claim may proceed.

12        **C. Supervisory Liability**

13        Plaintiff sues Defendant Banerjee and Defendant O'Donaughy in their supervisory

14   capacities. To the extent Plaintiff seeks to hold any defendant liable based solely upon their

15   supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for

16   the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556

17   U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v.

18   City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th

19   Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the

20   constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

21   wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

22   Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. &

23   Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16

24   (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt

25   personal participation in the offensive act if supervisory officials implement a policy so deficient

26   that the policy itself is a repudiation of constitutional rights and is the moving force of a

27   constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646

28   (9th Cir. 1989)) (internal quotation marks omitted).

9

To prove liability for an action or policy, the plaintiff "must...demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff may not merely rely on these supervising Defendants' responsibilities to ensure the safety and health of the prisoners, because such a claim is based on respondeat superior which is not cognizable under section 1983. Iqbal, 556 U.S. at 677. Conclusory allegations are insufficient to state the causal link between such defendant and the claimed constitutional violation. Plaintiff appears to be alleging supervisory liability from a combination of Defendant's personal knowledge of the violations and failure of policies at SATF. Except as to Defendant Banjeree as explained below, Plaintiff does not allege that Defendants personally participated or directed the alleged violations, and has failed to allege facts to support that Defendant participated in or directed the violations.

Plaintiff also has failed to plead facts showing that any policy was a moving force behind the alleged constitutional violations. *See Willard v. Cal. Dep't of Corr. & Rehab.*, No. 14-0760, 2014 WL 6901849, at *4 (E.D. Cal. Dec. 5, 2014) ("To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a 'direct causal link' between that policy and the alleged constitutional deprivation."). Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." Plaintiff fails to identify any policy at issue and how the policy itself is a repudiation of constitutional rights. Plaintiff's conclusory allegations are insufficient.  Rather, Plaintiff merely relies on Defendant Banerjee (except as explained below) and Defendant O'Donaughy responsibilities to operate the

medical facility and food service and ensure the safety and health of the prisoners, but this claim is based on respondeat superior which is not cognizable under section 1983. *Iqbal*, 556 U.S. at 677. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.

### D.  Deliberate Indifference to Medical Care

To allege a claim of deliberate indifference, plaintiff must show he had a serious medical need and defendants were deliberately indifferent to that need. A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *Id.* at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference*." Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a

1    physician has been negligent in diagnosing or treating a medical condition does not state a valid

2    claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

3    become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at

4    106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff

5    must show that the course of treatment the doctors chose was medically unacceptable under the

6    circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

7        Plaintiff alleges a serious medical need.  He has been diagnosed with Celiac Disease.  He

8    alleges he has not been given appropriate gluten free food to maintain his health and has suffered

9    with abdominal pain, weight loss, diarrhea, and other consequences.

10        Although prison conditions may be restrictive and harsh, prison officials must provide

11   prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v.*

12   *Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted). The Eighth Amendment requires

13   only that prisoners receive food that is adequate to maintain health; it need not be tasty or

14   aesthetically pleasing. *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977).

15        Plaintiff must also allege facts that each defendant subjectively "knows of and disregards

16   an excessive risk to inmate health and safety."

17        <u>Bini John</u>

18        Plaintiff fails to state a cognizable claim against Bini John.  Plaintiff failed to allege facts

19   that Bini John subjectively "knows of and disregards an excessive risk to inmate health and

20   safety." Defendant Bini John recorded Plaintiff's history of Celiac Disease, advised Plaintiff to

21   avoid gluten food, and ordered an antibody test.  Bini John did not disregard an excessive risk to

22   Plaintiff in Bini John's actions in his assessment and ordering an antibody test.  The test came

23   back negative for Celiac Disease a few days later on 5/25/2020. Plaintiff complains that Bini John

24   did not order Plaintiff's medically necessary diet or refer Plaintiff for a dietary consultation or use

25   the appropriate test to test for Celiac Disease.  Mere 'indifference,' 'negligence,' or 'medical

26   malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460

27   (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06).  Even gross negligence is insufficient to

28   establish deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d

12

1    1332, 1334 (9th Cir. 1990).  Bini John provided care to Plaintiff, even if that care was not

2    effective.  Regardless, this claim is improperly joined with claims arising at SATF.

3              Randy Le

4              Plaintiff states a cognizable claim for discontinuing Plaintiff prescription for a gluten free

5    diet for the time period between 6/23/22 and 6/27/22.  Plaintiff does not state a cognizable claim

6    for Randy Le failing to provide dietary consultation and recommendations, as this claim is not

7    cognizable under §1983 as it arises under "duties" pursuant to Title 15, and Plaintiff has failed to

8    allege how such actions constituted deliberate indifference to medical care.

9              Anu Banerjee

10             Plaintiff bases the liability upon Defendant Banerjee's supervisory role in employing

11   registered dietitians and following CDCR policy. The Court has not located definitive authority to

12   screen the second amended complaint based upon a theory of failure to hire.  But, for instance, a

13   supervisor's failure to <u>train</u> subordinates may give rise to individual liability under Section 1983

14   where the failure amounts to deliberate indifference to the rights of persons with whom the

15   subordinates are likely to come into contact. *See Canell v. Lightner*, 143 F.3d 1210, 1213-14 (9th

16   Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate the subordinate's

17   training was inadequate, the inadequate training was a deliberate choice on the part of the

18   supervisor, and the inadequate training caused a constitutional violation. *Id.* at 1214; *see also City*

19   *of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Lee v. City of*

20   *Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).

21             Accepting the allegations as true, as the Court must at this stage of the proceeding,

22   Plaintiff seeks to hold Defendant Banerjee liable for his own conduct.  Defendant Banerjee was

23   aware of the failure to implement policies (hire dietitian), that he ratified or caused the failure,

24   and that his inaction and omissions was the moving force of the alleged constitutional violations

25   regarding Plaintiff's dietary needs.  Accordingly, at this stage of the proceedings, Plaintiff states a

26   cognizable claim.

27             D. O'Donaughy

28             Plaintiff fails to state a cognizable claim against O'Donaughy.  Plaintiff bases liability

against O'Donaughy upon O'Donaughy's supervisory role in supervising preparation of food. Plaintiff may not merely rely on this supervising Defendant's responsibilities to ensure the safety and health of the prisoners, because such a claim is based on respondeat superior which is not cognizable under section 1983. *Iqbal*, 556 U.S. at 677.

### E.  Appeals Process

To the extent Plaintiff is complaining about the appeal process, Plaintiff is informed that he does not have a constitutionally protected right to have his appeals accepted or processed. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *See also Givens v. Cal. Dep't of Corrs. & Rehab.*, No. 2:19-cv-0017 KJN P, 2019 WL 1438068, at *4 (E.D. Cal. Apr. 1, 2019) ("California's regulations grant prisoners a purely procedural right: the right to have a prison appeal.") Therefore, prison officials are not required by federal law to process inmate appeals or grievances in a particular way. Consequently, the failure or refusal to process a grievance or the denial, rejection, or cancellation of a grievance does not violate any constitutionally protected right. *See Rushdan v. Gear*, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018); *Givens*, 2019 WL 1438068, at *4.

### F.  Title 15 and Policy Violation

To the extent that any Defendant has not complied with applicable state statutes or prison regulations for disclosure of information, these deprivations do not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See, e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D.

Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations) ; *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (same).

**IV.     Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's second amended complaint states cognizable claims against Defendants Randy Le and Anu Banerjee for deliberate indifference to medical care in violation of the Eighth Amendment.  However, Plaintiff's second amended complaint fails to state any other cognizable claims for relief against any other defendants. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's second amended complaint, filed November 16, 2023, (ECF No. 28), against Defendants Randy Le and Anu Banerjee for deliberate indifference to the need for medical care in violation of the Eighth Amendment; and

2.  All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on

appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:  **December 29, 2023**          /s/ *Barbara A. McAuliffe*

                                     UNITED STATES MAGISTRATE JUDGE